# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
### No. 15-1084V
### Filed: December 15, 2016
TO BE PUBLISHED

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| STEVEN ZEBOFSKY, | \* | |
| | \* | |
| Petitioner, | \* | Fact Ruling; Influenza ("Flu") Vaccine; |
| v. | \* | Shoulder Injury Related to Vaccine |
| | \* | Administration ("SIRVA"); |
| SECRETARY OF HEALTH | \* | Dual Covered and Non-Covered |
| AND HUMAN SERVICES, | \* | Vaccines Administered in Injured Arm; |
| | \* | Special Processing Unit ("SPU") |
| Respondent. | \* | |
| | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Maximillian Muller*, Muller Brazil LLP, Dresher, PA, for petitioner.
*Camille Collett*, U.S. Department of Justice, Washington, DC, for respondent.

### **RULING ON FACTS and RULE 5 SCHEDULING ORDER**[1]

**Dorsey,** Chief Special Master:

On September 28, 2015, Steven Zebofsky ("petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*,[2] (the "Vaccine Act"). Petitioner alleges that he suffered right shoulder injuries caused-in-fact by the influenza ("flu") vaccination he received on October 18, 2014. Petition at 1, ¶¶ 3, 11. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters.

### **I. Summary of Dispute**

The vaccination record establishes that petitioner received two vaccinations in his injured arm on October 18, 2014. *See* Exhibit 7, filed Mar. 18, 2016 (ECF No. 19). One vaccination, the influenza vaccination which is alleged as causal in this case, is

---

[1] Because this published ruling contains a reasoned explanation for the action in this case, the undersigned intends to post it on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.

covered by the Vaccine Program. *See* 42 C.F.R. § 100.3(a) XIV (2015). The other vaccination petitioner received, the adult pneumococcal vaccination, is not covered by the Vaccine Program.[3]

From May 20 through the end of September 2016, the parties engaged in litigative risk settlement discussions. On September 30, 2014, petitioner filed a status report indicating the parties were unable to reach a settlement in this case. Status Report at 1 (ECF No. 31). Petitioner explained that the parties' disagreement stems from the fact that petitioner received both the influenza and adult pneumococcal vaccinations in his injured shoulder. *Id.* Petitioner reported that "[t]he parties now believe further settlement negotiations would be futile . . . [and] causation and/or other issues will ultimately need to be decided by the Chief Special Master." *Id.*

The OSM staff attorney managing this SPU case held several telephonic status conferences with the parties. *See* Minute Entries, dated Oct. 4 and 25, 2016. A Rule 5 status conference was scheduled with the undersigned for December 13, 2016.[4] On November 16, 2016, petitioner filed a motion for subpoena authority to require the production of the Immunization Policy and Procedures Records for Walgreens Pharmacy, the drugstore where petitioner received his vaccinations. The undersigned denied petitioner's request[5] but indicated she would discuss the issue further with the parties at the Rule 5 status conference.

During that call, the undersigned noted that, even if produced by Walgreens, the documentation sought would describe only the procedures which should be followed and not what actually occurred in this case. Thus, she explained it would have little probative value.

More relevant is the information contained in the contemporaneously created medical records which have been filed in this case. Referencing those records, the undersigned presented her tentative findings and conclusions, describing in detail the evidence upon which she relied. She informed the parties there was sufficient evidence

---

[3] "There are two types of pneumococcal vaccines . . . pneumococcal conjugate and polysaccharide vaccine[s]." *Bundy v. Sec'y of Health & Human Servs.*, No. 12-769V, 2014 WL 348852, at *1 (Fed. Cl. Spec. Mstr. Jan. 8, 2014). Only pneumococcal conjugate vaccines, routinely administered to children, are covered by the Vaccine Program. *See* 42 C.F.R. § 100.3(a) XII (2015); *see also Bundy*, 2014 WL 348852, at *1; *Morrison v. Sec'y of Health & Human Servs.*, No. 04-1683V, 2005 WL 2008245, at *1 (Fed. Cl. Spec. Mstr. July 26, 2005) (describing how and when pneumococcal conjugate vaccines were added to the Vaccine Table). The vaccination records submitted in this case establish petitioner received the adult version of the pneumococcal vaccine, Pneumovax 23. *See* Exhibit 7.

[4] The Rule 5 status conference was originally scheduled for November 29, 2016. *See* Rule 5 Status Conference Order, issued Oct. 28, 2016 (ECF No. 33). The call was later rescheduled for December 13, 2016. *See* Non-pdf Rule 5 Order, issued Nov. 14, 2016.

[5] In subsequent conversations with the OSM staff attorney managing this case and the undersigned, both counsel indicated that respondent's counsel had requested petitioner file the motion for subpoena authority.

in the medical records to conclude that petitioner's right shoulder injuries resulted from the influenza vaccination he received rather than the adult pneumococcal vaccination.

After presenting this conclusion, the undersigned, having thoroughly reviewed and considered the evidence before her, expressed her willingness to issue a factual finding. Both parties, through counsel, agreed and thus, the undersigned now issues this fact ruling.

### II. Fact Ruling and Supporting Evidence

The undersigned determines there is preponderant evidence for a finding that petitioner's right shoulder injuries resulted from the influenza vaccination administered in his right arm on October 18, 2014 and not the adult pneumococcal vaccination administered the same day in the same arm. The undersigned bases her finding upon the following evidence:

1. At his first visit with Dr. Routman at Atlantis Orthopaedics on October 30, 2014, petitioner reported that his pain began 12 days earlier after getting the flu shot. *See* Exhibit 3 at 11.

2. Later in that same record from October 30, 2014, under Assessment and Plan, Dr. Routman again notes that petitioner "believes that the pain began after receiving the flu shot to [sic] high in the arm." *See* Exhibit 3 at 13.

3. Petitioner later sought treatment from Dr. McKay, an orthopedic surgeon at the Holy Cross Medical Group. The record from that visit contains a handwritten sheet which indicates "'flu shot given in wrong part of arm and has caused pain since' x 6 mos." *See* Exhibit 4 at 26.

4. During his initial evaluation for physical therapy on April 23, 2015, petitioner reported that "after receiving a Flu vaccination he began to experience pain in his right upper arm and swelling." *See* Exhibit 4 at 43.

The undersigned recognizes there are times in the medical records when petitioner referenced both vaccinations. *See* Exhibit 2 at 23; Exhibit 4 at 23. And petitioner admits that he presently "cannot recall which injection [he] received first or where the injections were given in [his] right shoulder." *See* Petitioner's Affidavit, filed as Exhibit 8 on Dec. 13, 2016 (ECF No. 35). Nevertheless, there are instances closer in time to the vaccinations, when petitioner clearly states that the vaccination which was given too high and which caused the swelling and pain he experienced was the influenza vaccination.

As the Federal Circuit has noted, it is appropriate for a special master to give greater weight to evidence contained in medical records created closer in time to the vaccination, even if the information is provided as part of a medical history. *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993) (medical records are generally trustworthy evidence). Moreover, close calls should be resolved

in favor of petitioners. *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274, 1280 (Fed. Cir. 2005).

### IV. Rule 5 Scheduling Order

At the conclusion of the conference, the undersigned indicated she would issue her fact ruling and would require the parties to file a status report within 30 days thereafter, updating her on the status of their settlement discussions. Respondent's counsel ask if, given her other deadlines and the holiday season, the parties could have 45 days to file their status report. Petitioner's counsel indicate petitioner had no objection to the 45 days requested by respondent.

**The parties shall file a joint status report updating the undersigned on the status of any settlement negotiations by no later than <u>Tuesday, January 31, 2017</u>.**

**IT IS SO ORDERED.**

<u>s/Nora Beth Dorsey</u>
Nora Beth Dorsey
Chief Special Master

4